UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTE DIVISION
3:11-cv-264-RJC

| | |
|---|---|
| ROBERT PARHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| FNU PARSONS, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** comes before the Court on two separate Motions for Summary Judgment by Defendants Carl Haigler and Jonathan Peguiese. (Docs. 47; 53).

**I.  BACKGROUND**

A.  Procedural Background

Plaintiff Robert Parham, a North Carolina inmate currently incarcerated at Polk Correctional Institution in Butner, North Carolina, filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment rights based on alleged deliberate indifference to a substantial risk of serious harm while Plaintiff was incarcerated at Lanesboro Correctional Institution in 2011.[1] (Doc. 1). Plaintiff filed the original Complaint on June 1, 2011, and an amended complaint on February 28, 2012. (Doc. 23). Plaintiff originally named six individuals as Defendants. On initial review, this Court dismissed Plaintiff's claims against all Defendants except for Defendants Haigler, Peguiese, and Parker, who were all identified as

---

[1]  Plaintiff also alleges that because of the alleged Eighth Amendment violations his due process rights under the Fourteenth Amendment were also violated.

1

officers at Lanesboro at all relevant times. (Doc. 6). Defendants Haigler and Peguiese have now filed motions for summary judgment, which are pending before this Court. On June 27, 2011, a summons was returned as unexecuted as to Defendant Parker, who is apparently no longer employed at Lanesboro. (Doc. 9).

On January 27, 2014, Defendant Haigler filed his pending motion for summary judgment. On February 5, 2014, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. 52). Plaintiff did not file a response to the summary judgment motion.[2] On February 28, 2014, Defendant Peguiese filed his own summary judgment motion. (Doc. 53). On March 28, 2014, this Court entered an order in accordance with Roseboro advising Plaintiff of his right to respond to the summary judgment motion. Plaintiff did not file a response to the summary judgment motion.

    B.    Factual Background

    1.    The Alleged Incident and the Summary Judgment Evidence

Because Plaintiff did not respond to the summary judgment motion, the only admissible evidence on summary judgment is the evidence presented by Defendants. In the Amended Complaint, Plaintiff complains about the conditions of his confinement during a 48-hour period commencing at 3:00 a.m. on January 1, 2011 and ending at 3:00 a.m. on January 3, 2011, while

---

[2] Because Plaintiff did not file a response to the summary judgment motion he is deemed to have abandoned his claims. See Crosby v. Gastonia, 635 F.3d 634, 637 n.3 (4th Cir. 2011). In an abundance of caution, however, the Court will address the merits of his claims. The Court does observe that, since he has presented no evidence opposing the summary judgment motion, Plaintiff fails to present any evidence rebutting the assertions made in the affidavits submitted by Defendants.

2

he was confined at Lanesboro. During this period Plaintiff was subjected to full restraints because of an altercation he had with another inmate. Plaintiff concedes that "his disruptive behavior demanded that [he] be controlled and put on 48 [hour] full restraints." (Doc. 23 at 6: Am. Compl.). Plaintiff claims that he suffered pain, physical injury, and emotional distress. (Id. at 4). He claims his restraints were too tight, which resulted in pain and numbness in his ankles and left wrist. (Id.). He claims officers failed to afford him the opportunity to use the bathroom, which resulted in his urinating on himself. (Id. at 5). Finally, he claims that officers failed to check on him periodically as required by DOC policy. (Id. at 6). He seeks compensatory and punitive damages. (Id. at 10).

As to his specific allegations against Defendants Haigler and Peguiese, Plaintiff alleges that he was placed in full restraints at 3:00 a.m. on January 1, 2011, by Defendant Haigler on the order of Defendant Peguiese. (Id. at 4). Plaintiff makes no claim that the restraints were too tight when Haigler applied them or that he complained about the restraints at the time they were applied. (Id.). Plaintiff admits that at 8:00 a.m. he was allowed to use the restroom. (Id.).

Plaintiff claims that at 9:00 p.m. on January 2, 2011, when Defendant Haigler and a nurse came to give Plaintiff his medication, Plaintiff complained he had not been allowed to use the bathroom since 8:00 a.m. the preceding day. (Id.). Plaintiff alleges that he also complained to the nurse that the restraints were too tight and his ankles and left wrist were numb as a result, that he had not been afforded an opportunity to exercise, and that his bladder "broke" because he had not been allowed to use the bathroom. (Id. at 4-5). The nurse checked Plaintiff's restraints and told Defendant Haigler to loosen them. (Id. at 5). Defendant Haigler stated he could not loosen the restraints without prior approval from a superior officer. (Id.). Plaintiff alleges that at 9:30 p.m. Defendant Haigler and another officer returned and loosened Plaintiff's restraints. (Id.).

3

Plaintiff asked Defendant Haigler for permission to use the bathroom. Plaintiff alleges that Defendant Haigler again stated that Plaintiff could not use the bathroom without authorization from a superior. (Id.). On January 3, 2011, at 3:00 a.m. Plaintiff's restraints were removed. (Id.). At 7:00 a.m. Plaintiff declared a medical emergency for injuries, pain, and numbness in his ankles and left wrist. (Id.).

Defendants' Summary Judgment Materials

Defendants presented extensive, undisputed evidence on summary judgment: Plaintiff is a Maximum Control ("Mcon") inmate with a history of throwing feces and urine, otherwise known as "gassing," on other inmates and correctional staff. (Doc. 48-2 at ¶¶ 15-16 & 22-24: Ex. A, Haigler Aff.). On January 1, 2011, at 4:43 a.m., Plaintiff threw feces and urine on another inmate and a correctional officer who were passing his cell. (Id. at ¶¶ 22-24; Doc. 48-7 at 2: Ex. A-5, Disciplinary Record). The officer in charge ordered that Plaintiff be placed in full restraints in an effort to modify his behavior. (Doc. 48-2 at ¶¶ 26-27; Ex. A-6, Doc. 48-8, Use of Force Policy, § .1504(g)(1)). On January 1, 2011, at 5:55 a.m. officers applied full restraints to Plaintiff. (Doc. 48-10 at 3: Ex. A-8, Daily Report of a Segregated Inmate). Defendant Haigler states that he was not there when the restraints were applied to Plaintiff.[3] (Doc. 48-2 at ¶ 30).

---

[3] Haigler explains in his affidavit that he works the second shift. (Doc. No. 48-2 at ¶ 30). Roll call for that shift is at 5:45 p.m., and the shift begins at 6:00 p.m. (Id.). The shift ends at 6:00 a.m. the next morning, or when relieved by the next rotation, whichever occurs later. (Id.). Haigler further explains that the Anson unit at Lanesboro is split into two sides, M and N. (Id. at ¶ 31). On both December 31, 2010, and January 2, 2011, Defendant Haigler was assigned to Anson M, while Plaintiff was housed on Anson N, A block, Cell 2. (Id.; Doc. No. 48-9 at 2-3: Ex. A-7, LCI Shift Logs). Thus, while Haigler was working at the prison when Plaintiff was placed in full restraints, he was assigned to Anson M, whereas Plaintiff was housed on Anson N. (Doc. No. 48-2 at ¶ 32; Doc. No. 48-9 at 2-3). As a result, Haigler was not involved in the application of full restraints to Plaintiff. (Doc. No. 48-2 at ¶ 32). Haigler further asserts that when Plaintiff was being placed in full restraints at 05:55 a.m. Haigler would have been going off shift, and application of the full restraints would have been assigned to the incoming shift.

Plaintiff's restraints were removed on January 1, 2011, at 11:45 a.m. to allow him to go to the bathroom and were reapplied at 11:55 a.m. (Id. at ¶ 33; Doc. 48-10 at 3).

On January 2, 2011, the Anson unit was short two officers. (Doc. 48-2 at ¶ 34; Doc. No. 48-9 at 6). At approximately 8:00 p.m., Haigler's supervisor instructed him to leave Anson M and to escort the nurse around Anson N to distribute medication. (Doc. 48-2 at ¶ 34). On January 2, 2011, at approximately 8:50 p.m. the nurse and Haigler arrived at Plaintiff's cell. (Id. at ¶ 35; Doc. 48-10 at 5). Plaintiff complained to the nurse that his handcuffs were too tight. (Id.). The nurse checked Plaintiff's cuffs and told Haigler they were too tight and should be loosened. (Id.). It was at that time that Haigler first became aware that Plaintiff was in four-point restraints. (Id.).

Haigler immediately contacted his supervisor and told him the nurse said Plaintiff's cuffs were too tight and should be loosened. (Id. at ¶ 36). Haigler's supervisor instructed him to finish medication rounds with the nurse and then to loosen Plaintiff's cuffs. (Id. at ¶ 37). Haigler's supervisor instructed him to return to Anson M immediately after loosening Plaintiff's cuffs. (Id.). At approximately 9:00 p.m, Haigler and another officer returned to Plaintiff's cell and loosened Plaintiff's handcuffs. (Id. at ¶ 38). As instructed, Haigler immediately returned to Anson M. (Id.). Between January 1, 2011, and January 3, 2011, Haigler's initials only appear twice on Plaintiff's segregation log—at 8:50 p.m. on January 2, 2011—in conjunction with the distribution of medication and the loosening of Plaintiff's restraints. (Id. at ¶ 39; Doc. 48-10 at 5: Daily Report of a Segregated Inmate). Those are the only interactions Haigler had with Plaintiff during that period. (Doc. 48-2 at ¶ 39).

Haigler asserts in his affidavit that when he returned to loosen Plaintiff's restraints,

(Id.).

5

Plaintiff did not ask Haigler to use the restroom. (Id. at ¶ 40). Haigler states that if Plaintiff had asked Haigler to use the restroom, Haigler would have noted it on the Daily Report. (Id.). There is no such notation on Plaintiff's Daily Report. (Doc. 48-10 at 5). Plaintiff's Daily Report log reveals that he had urinated on himself on or before 6:25 p.m. on January 2, 2011. (Doc. 48-2 at ¶ 41; Doc. 48-10 at 5). Haigler was not assigned to Anson N at that time. (Doc. 48-2 at ¶ 41; Doc. 48-9 at 6; 7: Shift Log). A second notation reveals a second urination incident at or before 8:01 p.m. (Doc. 48-10 at 5). Haigler and the nurse had just started medication rounds at 8:01 p.m. and were on the other side of Anson N. (Doc. 48-2 at ¶ 41). Plaintiff's segregation log reveals that after Haigler loosened Plaintiff's handcuffs, correctional personnel checked on Plaintiff four more times. (Id. at ¶ 42; Doc. 48-10 at 5). There is no notation indicating that Plaintiff requested to use the restroom, or any further reports of Plaintiff urinating on himself. (Doc. No. 48-2 at ¶ 42; Doc. 48-10 at 5). During the period Plaintiff was subjected to full restraints, medical personnel checked on his physical condition at his cell on January 1, 2011, at 3:40 p.m. and on January 2, 2011, at an unknown time. (Doc. 48-12 at 2). Plaintiff voiced no medical complaint in either instance. (Id.).

In addition to the checks by medical personnel, a nurse also checked Plaintiff on January 2, 2011, at 11:30 p.m., two and one-half hours after Haigler loosened Plaintiff's handcuffs. (Id. at 3). At that time, the nurse found good pulses and capillary refill. (Id.). She was "able to get pinky finger between cuffs and wrist. [Inmate] yelling and belligerent." (Id.). No numbness was detected. (Id.). On January 3, 2011, at 12:30 p.m., a nurse assessed Plaintiff during sick call. She noted a black line near the ankle area with good pulses, pink nail beds, and rapid capillary refill. (Id. at 4). While Plaintiff claimed his foot was numb, his foot flexed in response to stimuli. (Id.). The nurse also noted a small bump on Plaintiff's left wrist, which she treated

with an ice pack.  (Id.).

On January 13, 2011, Plaintiff submitted Grievance No. 4865-11-0058 ("Grievance No. 0058").  (Doc. 54-2 at ¶ 7: Ex. C, Bullock Aff.; Doc. 54-3: Ex. C-1, Grievance No. 0058).  Unit Manager Glenn M. Bullock was assigned to conduct an investigation and provide the Step One grievance response to Plaintiff.  (Doc. 54-2 at ¶ 8).  Bullock spoke to members of all four shifts working on the Anson Unit during the period Plaintiff was on full restraints.  (Doc. 54-2 at ¶ 8; Doc. 54-3 at 5).  Staff reported to Bullock that they periodically checked on Plaintiff in accordance with policy.  (Id.).  Staff reported that, during some of these periodic checks, they offered Plaintiff an opportunity to use the restroom, and to stand, stretch, and exercise.  (Id.).  Staff reported that Plaintiff refused these offers out of protest against his being placed in restraints.  (Id.).

As the Anson unit manager, Bullock also had close personal interaction with the inmates housed there.  (Doc. 54-2 at ¶ 9).  Bullock states in his affidavit that he is very familiar with Plaintiff's character and comportment while housed on LCI's Anson unit.  (Id.).  Plaintiff was a particularly difficult inmate to control.  (Id.).  Plaintiff was constantly acting out against staff.  (Id.).  Bullock notes, for example, that in the weeks leading up to his placement in full restraints, Plaintiff had several "gassing" incidents in which he threw a mixture of feces and urine on prison staff and other inmates.  See (Doc. 48-4: Ex. A-2, Pl.'s Disciplinary History).  On November 11, 2010, Plaintiff "squirted an unknown substance" into another inmate's cell.  (Doc. 48-6 at 2: Ex. A-4, Pl.'s Disciplinary Record dated November 11, 2010).  On December 15, 2010, Plaintiff threw a mixture of feces and urine on a staff nurse, and the substance "land[ed] in her hair and on her uniform."  (Doc. 48-5 at 2: Ex. A-3, Pl.'s Disciplinary Record dated December 15, 2010).  On January 1, 2011, Plaintiff "squeezed a tube [of] watery substance which smelled like urine

7

and feces" onto a guard and another inmate. (Doc. 48-7 at 2: Ex. A-5, Pl.'s Disciplinary Record dated Jan. 1, 2011). Additionally, Plaintiff frequently exhibited passive-aggressive behavior, declining, for example, meals, recreation, or medicine, and then complaining when those things were not provided to him. (Doc. 54-2 at ¶ 9).

As noted, Plaintiff also alleges a claim of deliberate indifference to substantial risk of serious harm against the supervising officer of Anson Unit, Defendant Peguiese. Defendant Peguiese has submitted as part of his summary judgment materials an affidavit by Richard D. Tucker, the officer in charge at Lanesboro during the period Plaintiff was in restraints. Tucker's affidavit states that Defendant Peguiese was habitually physically present on the Anson Unit, regularly communicated in person and by radio with correctional staff to ensure the smooth operation of the Anson Unit, and routinely addressed inmate complaints personally. (Doc. 54-4 at ¶ 9: Ex. D, Tucker Aff.). Tucker notes in his affidavit that, as part of their duties, the correctional sergeants assigned to a control or segregation unit must oversee its operations and ensure, among other things, that officers conduct periodic checks on segregation inmates to ensure their safety. (Id.). Tucker notes in his affidavit that Sergeant Peguiese's signature appears at the lower right hand corner of Plaintiff's Daily Report of Segregated Inmate for the period December 29, 2010, at 14:32 through January 1, 2011 at 23:05. (Id.; Doc. 48-10 at 2; 3; 4). Tucker notes that Peguiese's signature denotes that, to the best of his knowledge, procedures were followed and staff checked on Plaintiff on the dates and times set forth thereon. (Id.). The remaining pages of Plaintiff's Daily Report of a Segregated Inmate were signed by the other correctional sergeant assigned to Anson Unit for the period January 2, 2011, at 00:19 through January 5, 2011, at 01:18. (Doc. 54-4 at ¶ 11; Doc. 48-10 at 5; 6).

II.     **STANDARD OF REVIEW**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**III. DISCUSSION**

A. Eighth Amendment Allegations

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. AMEND. VIII. The Eighth Amendment protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component—that the harm inflicted on the inmate was sufficiently serious—and a subjective component—that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). What an inmate must establish respecting each component "varies according to the nature of the alleged constitutional violation." Id. The objective component of an Eighth Amendment claim is "contextual and responsive to 'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992) (internal citations omitted). Under the objective component the court is to determine whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. Id.

A prison official's "'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted). The United States Supreme Court and the Fourth Circuit have rejected a negligence standard in determining deliberate indifference. See Whitley, 475 U.S. at 319; Moore v. Winebrenner, 927 F.2d 1312, 1315-17 (4th Cir. 1991). Thus, merely negligent behavior by a prison official in failing to protect a prisoner from a risk of harm does not present a constitutional violation. See Whitley, 475 U.S. at 319 ("[C]onduct that does not purport to be punishment at all must involve more than ordinary lack of due care . . . . [O]bduracy and wantonness, not inadvertence . . . characterize the conduct prohibited by [the Eighth Amendment]."); see also Moore, 927 F.2d at 1316 (citing Fourth Circuit cases adopting the Supreme Court's reasoning in

Whitley). The Supreme Court has summarized deliberate indifference as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.

Farmer, 511 U.S. at 837.

In the prison context, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). To show that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) an extreme deprivation of a basic human need; and (2) deliberate indifference to prison conditions by prison officials. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). To satisfy the objective element of a conditions of confinement claim, a prisoner must demonstrate an extreme deprivation, such as "serious or significant physical or emotional injury resulting from the challenged conditions, or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) (quoting Strickler, 989 F.2d at 1381) (internal citations and quotation marks omitted)).

1. Plaintiff's Eighth Amendment Claim against Defendant Haigler

Plaintiff's claim against Defendant Haigler is based on Plaintiff's allegations that Haigler was deliberately indifferent to a substantial risk of serious harm to Plaintiff and that Haigler violated prison policy. For the following reasons, Haigler is entitled to summary judgment on Plaintiff's claims against him.

First, to the extent that Plaintiff seeks redress in this action for Defendant Haigler's purported deviation from prison policy, Section 1983 provides him no remedy. In the absence of

11

the violation of a federal constitutional violation, the existence of state policy designed to regulate the conduct of prison employees does not entitle an inmate to sue to enforce the regulations or for damages as a result of their breach. Riccio v. Cnty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").

Next, Plaintiff has failed to raise a genuine issue of material fact as to whether Defendant Haigler was deliberately indifferent to a substantial risk of serious harm to Plaintiff. The undisputed evidence on summary judgment shows that Haigler was not the person who applied the restraints to Plaintiff on January 1, 2011, and that Haigler's interaction with Plaintiff was limited to a single encounter during the 48-hour period Plaintiff was subjected to full restraints. It is also undisputed that when Plaintiff told Haigler his restraints were too tight, Haigler noted the fact on the daily report, notified his superior, and loosened the restraints within ten minutes of Plaintiff's complaint. Two and one-half hours after Haigler loosened Plaintiff's cuffs, a nurse examined Plaintiff and noted that she could fit a pinky between the cuffs and Plaintiff's wrist and she detected no numbness. The next afternoon on January 3, 2011, after Plaintiff's restraints were removed, a nurse treated with ice the minimal marks and swelling on Plaintiff's wrists. Plaintiff voiced no complaints to medical personnel on January 1 or January 2, 2011, during segregation health checks. Here, there is simply no genuine issue of material fact as to whether any conduct of Haigler violated Plaintiff's Eighth Amendment rights arising out of the placement of Plaintiff in restraints.

Plaintiff also complains that he was denied the right to use the restroom while he was in restraints. Haigler had stated in his affidavit that if Plaintiff had asked Haigler for permission to

use the bathroom, Haigler would have noted the same on the daily report. Haigler attests that Plaintiff did not complain to Haigler about needing to use the bathroom. When the nurse checked Plaintiff's restraints two and one-half hours after Officer Haigler loosened them, Plaintiff did not complain about being denied use of the bathroom. Similarly, the Daily Segregation log shows no further incidents of Plaintiff urinating on himself. As Defendant Haigler notes, Plaintiff's refusal to avail himself of bathroom breaks cannot result in a finding that Defendants violated Plaintiff's Eighth Amendment rights. Accord Simions v. Androscoggin Cnty. Jail, Civ. No. 10-10-P-H, 2010 WL 3704924, at *4 (D. Me. Sept. 12, 2010) (where summary judgment record established that inmate would have been taken to the bathroom if he had asked, but that he did not ask, summary judgment was properly granted to the defendant correctional officers).

In sum, the undisputed evidence on summary judgment shows that none of Defendant Haigler's conduct was in violation of Plaintiff's Eighth Amendment rights. Therefore, Haigler is entitled to summary judgment on Plaintiff's Eighth Amendment claims.

2. Plaintiff's Eighth Amendment Claim against Defendant Peguiese

As to his claim against Defendant Peguiese, Plaintiff alleges that Defendant Peguiese ordered that Plaintiff be placed in full restraints.4 (Doc. 23 at 4). Plaintiff further alleges that Defendant Peguiese thereafter unreasonably disregarded a substantial risk of serious harm to Plaintiff while he was in full restraints for 48 hours. Plaintiff has alleged that, as a supervisor of Plaintiff's unit, Defendant Peguiese did not make any cell checks to Plaintiff's cell while Plaintiff was in full

---

[4] Nothing in Defendants' summary judgment materials indicates whether Peguiese was the officer who ordered Plaintiff to be placed in full restraints. Assuming that Peguiese did order the restraints, as the Court discusses herein, the placement of Plaintiff in full restraints was not a violation of his Eighth Amendment rights.

restraints, nor did Defendant Peguiese instruct those under his command to do so.  Plaintiff alleges that Defendant Peguiese deviated from prison policy and procedure and that Plaintiff's actions violated Plaintiff's Eighth Amendment rights.  (Id. at 8.)

Defendant Peguiese is entitled to summary judgment as to Plaintiff's claims against him.[5]  First, as to Plaintiff's claim that Defendant Peguiese violated his constitutional rights by ordering that he be placed in full restraints, Plaintiff concedes that he was placed in full restraints for "an altercation" he had with another inmate on January 1, 2011.  (Id. at 3).  Moreover, the altercation was a "gassing," wherein Plaintiff threw a mixture of feces and urine on an officer and another inmate passing his cell.  (Doc. 48-7: Disciplinary Record).  As the Supreme Court observed in Hudson v. McMillian, 503 U.S. 1, 8 (1992), context matters, and prisons clearly have the right take proscriptive measures based on past misconduct without violating the objective component of the Eighth Amendment.  Indeed, the Eighth Amendment does not prohibit the restraint of inmates as a behavior modification or control measure or to safeguard the inmate from self-injury.  LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (holding that requiring a dangerous inmate to shower in handcuffs and leg shackles did not violate the Eighth Amendment, as the measure was taken to protect other inmates and staff).  Here, the prison was clearly justified in placing Plaintiff in full restraints, where Plaintiff had demonstrated a pattern of throwing feces and urine at prison guards and other inmates.  Indeed, given the undisputed evidence of Plaintiff's incidents of gassing as well as other disruptive conduct, the Court does not even consider this to be a close case.  Moreover, as to Plaintiff's allegation in the amended complaint that Peguiese was deliberately indifferent to the substantial risk of serious harm to Plaintiff, the undisputed evidence on summary judgment shows that Peguiese was in fact

---

[5]  As noted, Plaintiff has not responded to Defendant Peguiese's summary judgment motion.

monitoring Plaintiff and other inmates on the Anson Unit while Plaintiff was in full restraints.

In addition to the fact that Plaintiff fails to raise a genuine issue of material fact as to whether Defendant Peguiese's own conduct violated Plaintiff's constitutional rights, Plaintiff also fails to raise a genuine issue of fact as to whether Defendant Peguiese can be held liable based on supervisory liability based on the conduct of others. There is no liability in Section 1983 actions based on respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). For Defendant Peguiese to be held liable based on supervisory liability, Plaintiff would have to show that Peguiese (1) had actual or constructive knowledge a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff; (2) that Peguiese's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between Peguiese's inaction and the particular constitutional injury suffered by Plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Here, the Court has already found that Defendant Haigler did not violate any of Plaintiff's rights under the Eighth Amendment. As to treatment by other prison staff, the undisputed evidence also shows that, while Plaintiff was in full restraints, medical personnel checked on his physical condition at his cell on January 1, 2011 at 3:40 p.m. and on January 2, 2011, at an unknown time. (Doc. 48-12 at 2: Pl.'s Medical Records). Plaintiff voiced no medical complaint in either instance. (Id.). Moreover, Plaintiff was properly treated for the minor injury to his wrist after the restraints were removed. Plaintiff has failed to submit any evidence showing that staff at the prison ignored Plaintiff's serious medical needs or complaints. As the undisputed evidence shows that no one at the prison violated Plaintiff's Eighth Amendment or other federal or constitutional rights, Defendant Peguiese cannot be liable based on supervisory liability. In sum, Peguiese is entitled

to summary judgment.[6]

### 3. Plaintiff's Eighth Amendment Claim against Defendant Parker

The only remaining Defendant in this action is Defendant Parker. As noted, the summons for Defendant Parker was returned to this Court as unexecuted on June 27, 2011, with a notation that Defendant Parker is no longer employed at Lanesboro. See (Doc. 9). Plaintiff has not attempted to serve Plaintiff with summons since the first summons was returned as unexecuted. In his amended complaint, Plaintiff alleges that Defendant Parker deviated from prison policy and violated Plaintiff's constitutional rights by ignoring a substantial risk of serious harm to Plaintiff while Plaintiff was in full restraints. The only allegations that Plaintiff makes against Defendant Parker in the amended complaint are that Defendant Parker initially assisted with placing Plaintiff in full restraints, Parker assisted with loosening Plaintiff's restraints on January 2, 2011, Parker refused a request by Plaintiff to use the bathroom after loosening Plaintiff's restraints on January 2, 2011, and Parker deviated from prison policy and procedure by failing to make mandatory cell checks and by ignoring the risks to Plaintiff's health and safety. (Doc. 23 at 4; 5; 8). Here, the summary judgment evidence submitted by Defendants Haigler and Peguiese dictates that Defendant Parker is also entitled to summary judgment, as the undisputed evidence shows that no one at the prison violated Plaintiff's constitutional rights. See Columbia Steel Fabricators, Inc. v. Ahlstrom, 44 F.3d 800, 802-03 (9th Cir. 1995) (noting that unserved defendants are entitled to benefit from other defendants' summary judgment motions where the controlling issues would be the same for the unserved defendants, those issues have been briefed, and the plaintiff has been given the opportunity to address the controlling issues).

---

[6] Defendants also assert qualified immunity as a defense but the Court does not reach the issue of qualified immunity, as there was no violation of a constitutional right in the first instance.

That is, the undisputed evidence shows that the placement of Plaintiff in full restraints was not a violation of Plaintiff's Eighth Amendment rights; officers loosened Plaintiff's restrains within minutes of being told they were too tight; officers and other staff properly monitored Plaintiff while he was in full restraints; and Plaintiff was not denied the right to use the bathroom. Here, because the undisputed evidence on summary judgment shows that no one at the prison violated any of Plaintiff's federal or constitutional rights, summary judgment is proper as to the unserved Defendant Parker.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motions for Summary Judgment, (Doc. Nos. 47; 53), are **GRANTED**, and this action is dismissed with prejudice as to all Defendants.//
2. The Clerk is directed to terminate this action.

Signed: July 28, 2014

Robert J. Conrad, Jr.
United States District Judge